United States District Court
Southern District of Texas
**ENTERED**
March 27, 2017
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | |
|---|---|
| LOUIS DEVRIES, *et al*, § | |
| § | |
| Plaintiffs, § | |
| VS. § | CIVIL ACTION NO. 7:16-CV-00338 |
| § | |
| BULLDOG WELL TESTING LLC, *et al*, § | |
| § | |
| Defendants. § | |

## OPINION

The Court now considers Barry Hamlin ("Hamlin"), Gordon Highfill ("Highfill"), and Kirk Miller's ("Miller") (collectively "Defendants") motion to dismiss for lack of personal jurisdiction.[1] After duly considering the record and authorities, the Court **GRANTS** the motion, and **DISMISSES WITHOUT PREJUDICE** Defendants Hamlin, Highfill, and Miller.

### I. BACKGROUND

Louis Devries, Barry Grantham, and Joe Goodman (collectively "Plaintiffs") allege that they were not paid overtime by Defendants.[2] Moreover, Plaintiff Devries alleges that he apprised Defendants that Defendants had violated the law, and that he was consequently fired.[3] Plaintiffs never specify the dates of these alleged events.

Defendant Bulldog Well Testing LLC was an Oklahoma limited liability company until May of 2015, when it merged with El Dorado to become Bull Dorado Holdings LLC.[4] Plaintiffs urge, and Defendants do not challenge, that Bull Dorado Holdings LLC has substantially similar

---

[1] Dkt. No. 20.
[2] Dkt. No. 14. at p. 3. ¶ 21 (the Court uses the CM-ECF page numbers rather than the page numbers of the complaint itself.).
[3] *Id*. ¶¶ 24 & 27.
[4] Dkt. No. 11-2 p. 3. ¶ 5. (Plaintiffs at times use "Bulldorado," but the Court adopts Defendants' "Bull Dorado" usage.)

interests, assets, contracts, and management as Bulldog Well Testing LLC.[5] Thus, both oil field service companies (collectively "Bulldog") are effectively the same entity for purposes of this motion.

Defendants are the sole members of Bulldog.[6] However, they have allegedly delegated management of day-to-day business operations and employment supervision to Defendant Gary Unterbrink ("Unterbrink").[7] Plaintiffs allege that Unterbrink's Texas residence served as Bulldog's principle place of business.[8] Plaintiff Devries was allegedly hired by Bulldog in Hidalgo County,[9] though it is unclear whether he and the other Plaintiffs were hired directly by Bulldog's LLC members (i.e., Defendants) or by Unterbrink. It is also alleged that Unterbrink was a Texas resident,[10] thus perhaps explaining why this Court's personal jurisdiction over him is not challenged at this time.

Defendants argue that this Court lacks personal jurisdiction over them because they were never properly served.[11] They also argue that minimum contacts do not exist to justify the exercise of personal jurisdiction over them.[12] Plaintiffs' *complaint* contains the following jurisdictional allegations against Defendants:

- They are residents of Oklahoma, not Texas,[13]
- They contracted work in Texas,[14] and

---

[5] Dkt. No.14 pp. 4–5. ¶ 40.
[6] Dkt. No. 12-1 p. 4.
[7] Dkt. No. 14 p. 2 ¶¶ 7 & 17; Dkt. Nos. 11-1 p. 3 ¶ 4; Dkt. No. 11-2 p. 2. ¶ 4; Dkt. No. 11-3 p. 2. ¶ 4.
[8] Dkt. No. 14 p. 2 ¶ 7.
[9] *Id*. p. 3 ¶ 28.
[10] Dkt. No. 14 at p. 2 ¶ 7.
[11] Dkt. No. 20 at p. 1 ("the Court lacks personal jurisdiction over these Defendants and that there was insufficient service of process.").
[12] *Id*. pp. 5–8.
[13] Dkt. No. 14 p. 2 ¶¶ 8–10.
[14] *Id*. p. 3 ¶ 19.

- They recruited Texas residents for employment within Texas[15] (Plaintiffs' supporting affidavits clarify that Miller and Highfill recruited high-school aged family and friends to work in Texas, though it is not clear how many or how often).[16]

Moreover, Plaintiffs supply *affidavits* with the following jurisdictional allegations against Defendants:

- Miller and Highfill worked in Texas as drill well consultants,[17] and had contact with Bulldog employees on a daily basis (it is not clear where these contacts took place),[18]

- Miller visited jobsite on at least three to four occasions,[19] and was "a company man for 4 packages",[20]

- Highfill was seen at a job site "once a week on average,"[21] and was seen "from time to time",[22]

- Hamlin visited Texas to conduct safety training (Hamlin's affidavit clarifies this happened five times),[23] and also visited Texas once as Bulldog's CEO to deliver a truck.[24]

- Either Hamlin, Highfill, or Miller executed two leases for offices with equipment yards[25] (Plaintiffs state in their response to this motion that these offices were located in San Angelo, Texas),[26]

Plaintiffs' *response* to the present motion makes the following additional jurisdictional allegations:

- "Defendants Miller, Highfill, and Hamlin hired Gary Unterbrink to be an operations manager. Defendants recruited individually or through an intermediary (Unterbrink) to hire Texas citizens for employment in Texas."[27]

---

[15] Dkt. No. 14 p. 3 ¶ 20.
[16] Dkt. No. 21-2 p. 1 ¶ 4.
[17] *Id.* ¶ 1.
[18] *Id.* ¶ 3.
[19] Dkt. No. 21-3 ¶ 2.
[20] Dkt. No. 21-4 ¶ 1.
[21] Dkt. No. 21-3 ¶ 1.
[22] Dkt. No. 21-4 ¶ 2.
[23] Dkt. No. 20-1 p. 3. ¶ 7.
[24] Dkt. No. 20-1 p. 3 ¶ 6.
[25] Dkt. No. 21-2 p.1 ¶ 6.
[26] Dkt. No. 21 p. 5. ("Miller, Hamlin and Highfill leased offices with equipment yards in the city of San Angelo, Texas.").
[27] Dkt. No. 21 p. 2. ¶ 2.

- "Hamlin, Miller, and Highfill established an office in [Texas] for Bulldog."[28]

Plaintiffs also make general allegations against "Defendants," without distinguishing between Defendant Unterbrink (whose actions are irrelevant to the instant motion), and Defendants Hamlin, Highfill, and Miller (whom this motion concerns). These allegations are as follows:

- Defendants failed to pay overtime wages . . . .[29]

- Defendants did not keep time logs of hours worked, therefore defendants . . . [violated the] FLSA.[30]

- Defendants violated Texas Labor Code §21.055 [concerning unlawful retaliation].[31]

- Defendants terminated Plaintiff because he informed Defendants that continued wage payment under the day rate form was in direct violation of the FLSA.[32]

Because the Court finds that Defendants do not have sufficient minimum contacts with Texas for this Court to exercise personal jurisdiction over them, the Court does not address the issue of service of process. The Court now turns to the applicable legal standard.

## II. LEGAL STANDARD

### A. *Legal Standard—Rule 12(b)(2) Personal Jurisdiction*

Rule 12(b)(2) authorizes dismissal based on the defense that a court lacks jurisdiction over the defendant.[33] The plaintiff bears the burden of establishing personal jurisdiction over non-resident defendants,[34] but need only establish a prima facie case of personal jurisdiction to survive a motion to dismiss.[35] A prima facie showing is less demanding than preponderance of

---

[28] *Id.* p. 5.
[29] Dkt. No. 14 p. 4. ¶ 31.
[30] *Id.* p .3 ¶ 23.
[31] *Id.* p. 4. ¶ 34.
[32] *Id.* ¶ 35.
[33] *See* Fed. R. Civ. P. 12(b)(2).
[34] *See Bullion v. Gillespie*, 895 F.2d 213, 216–17 (5th Cir. 1990).
[35] *Walk Haydel & Associates, Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 241 (5th Cir. 2008).

the evidence.[36] Such a showing can be made using any recognized discovery method.[37] Absent a hearing, however, the court must accept as true any non-conclusory, jurisdictional allegations in the plaintiff's complaint and resolve all factual conflicts presented by the parties' submitted evidence in the plaintiff's favor.[38]

Two conditions must be met to establish personal jurisdiction: "(1) the forum state's long-arm statute [must confer] personal jurisdiction over that defendant; and (2) the exercise of personal jurisdiction [must] compl[y] with the due process requirements of the Fourteenth Amendment of the United States Constitution."[39] However, the first step in the analysis can effectively be ignored in Texas federal courts because the Texas long-arm statute is co-extensive with Fourteenth Amendment Due Process.[40] Put differently, if the exercise of personal jurisdiction complies with the due process requirements of the Fourteenth Amendment, which it must, then the analysis is complete because personal jurisdiction automatically exists under the Texas long-arm statute, and both elements are thus simultaneously satisfied.[41]

In turn, constitutional Due Process is satisfied if "(1) that defendant has purposefully availed himself of the benefits and protections of the forum state by establishing minimum contacts with the forum state, and (2) the exercise of jurisdiction over that defendant does not offend traditional notions of fair play and substantial justice."[42] The first prong—"minimum

---

[36] *Luv N' care, Ltd. v. Insta-Mix*, Inc., 438 F.3d 465, 469 (5th Cir. 2006).
[37] *Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1165 (5th Cir. 1985).
[38] *Sealed Appellant 1 v. Sealed Appellee 1*, 625 Fed. Appx. 628, 631 (5th Cir. 2015) ("[W]e must determine whether the plaintiffs have established a prima facie case of personal jurisdiction through *non-conclusory* allegations supported by admissible evidence.") (emphasis added); *Gardemal v. Westin Hotel Co.*, 186 F.3d 588, 592 (5th Cir. 1999); *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008).
[39] *A.T.N. Indus., Inc. v. Gross*, 4:14-CV-02743, 2016 WL 362309, at *6 (S.D. Tex. Jan. 29, 2016) (citing *Irving v. Owens–Corning Fiberglas Corp.*, 864 F.2d 383, 385 (5th Cir. 1989)).
[40] *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009).
[41] *Id.*
[42] *Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000) (citations and internal quotation marks omitted).

contacts"—can be established in two ways. The first is through specific jurisdiction,[43] which requires that the nonresident defendant "has purposefully directed [his] activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities."[44]

The second form of "minimum contacts" is general jurisdiction.[45] General jurisdiction is established when the foreign defendant's contacts with the forum state are so extensive and substantial as to render the defendant effectively "at home" in the forum state.[46] Naturally then, in the case of individual defendants, "the paradigm forum for the exercise of general jurisdiction is the individual's domicile."[47] The test for general jurisdiction is very demanding because the forum-contacts in question do not give rise to the claims at bar. The Fifth Circuit has stated, "[t]his circuit has consistently imposed the high standard set by the Supreme Court when ruling on general jurisdiction issues."[48]

In order for general jurisdiction to exist, the foreign defendant's contacts with the forum state must be systematic, continuous, extensive, and substantial.[49] Even repeated contacts with forum residents by a foreign defendant "may not constitute the requisite substantial, continuous and systematic contacts required for a finding of general jurisdiction . . . ."[50] Furthermore, the Fifth Circuit has noted that in-forum business transactions, "even at regular intervals," may not

---

[43] *Maner v. Health*, 3:15-CV-191, 2016 WL 5394266, at *2 (S.D. Tex. Sept. 27, 2016) (citing *Lewis v. Fresne*, 252 F.3d 352, 358 (5th Cir. 2001)).
[44] *Walk Haydel & Associates, Inc., Co.*, 517 F.3d at 243.
[45] *Submersible Sys., Inc. v. Perforadora Cent.*, S.A., 249 F.3d 413, 419 (5th Cir. 2001).
[46] *Daimler AG v. Bauman*, 134 S. Ct. 746, 760 (2014) (discussing general jurisdiction in the context of foreign corporations); *Skidmore v. Led Zeppelin*, 106 F. Supp. 3d 581, 588 (E.D. Pa. 2015) (denying general jurisdiction because individual defendants were not "at home" in the forum state"); *Dumont v. Corr. Corp. of Am.*, 2:14-CV-209, 2015 WL 3791407, at *4 (D. Vt. June 17, 2015) (same).
[47] *Daimler*, 134 S. Ct. at 760.
[48] *Johnston*, 523 F.3d at 611; *Monkton Ins. Services, Ltd. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014) (stating that the test for general jurisdiction is "incredibly difficult" to meet).
[49] *Submersible Sys., Inc.*, 249 F.3d at 419 (requiring extensive, systematic, and continuous contacts); *Asarco, Inc. v. Glenara*, Ltd., 912 F.2d 784, 787 (5th Cir. 1990) (requiring the contacts to be substantial, not just systematic and continuous); *Revell v. Lidov*, 317 F.3d 467, 471 (5th Cir. 2002) (same).
[50] *Revell*, 317 F.3d at 471.

support general jurisdiction.[51] Finally, "vague and overgeneralized assertions that give no indication as to the extent, duration, or frequency of contacts are insufficient to support general jurisdiction."[52]

Regardless of whether the Court is conducting a specific or general jurisdiction analysis, the guiding principle is the same: for Due Process purposes, "minimum contacts" exist when the defendant's "conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there."[53] The Court now turns to its analysis.

### III. ANALYSIS

#### A. *Specific Jurisdiction*

Before considering whether this Court may exercise jurisdiction over Defendants, the Court identifies Plaintiffs' claims. Plaintiffs' first claim is wrongful termination under Texas Labor Code § 21.055,[54] which prohibits, in pertinent part, retaliation by an employer for an employee's filing of a complaint or opposition to discriminatory practices.[55] Plaintiff Devries alleges that he informed Defendants of unlawful discrimination, as well as OSHA and FLSA violations, but that he "was subsequently terminated in retaliation . . . ."[56] Plaintiffs' second claim is for FLSA violations for failure to pay overtime wages.[57] To support this claim, Plaintiffs allege that they "routinely worked over 40 hours per week without compensation for overtime hours worked at a rate of one and one-half times their regular rate of pay per hour."[58] Moreover, "Defendants failed to pay overtime wages,"[59] and "Defendants did not keep time logs of hours

---

[51] *Johnston*, 523 F.3d at 610.
[52] *Johnston*, 523 F.3d at 610.
[53] *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 287 (1980).
[54] Dkt. No. 14 p. 4. ¶ 34.
[55] Tex. Labor Code Ann. § 21.055 (West).
[56] Dkt. No. 14 p. 3. ¶ 27.
[57] *Id*. p. 4 ¶¶ 29–32.
[58] *Id*. p. 3. ¶ 21.
[59] *Id*. p. 4 ¶ 31.

worked, therefore defendants knowingly, willingly or with reckless disregard paid plaintiffs on a day rate schedule in violation of FLSA."[60] In light of these claims, the Court considers whether Defendants' "conduct and connections with [Texas] are such that [they] should reasonably anticipate being haled into court [here]."[61]

Defendants could not reasonably anticipate being haled into Texas court for FMLA or unlawful termination claims given their contacts with Texas. Each Defendant is a citizen of Oklahoma, not Texas,[62] and appears to have general business contacts with Texas which do not, by nature, give rise to lawsuits such as the one at bar. For example, Defendants are alleged to have contracted for business in Texas,[63] recruited unidentified Texas residents to work in Texas,[64] visited jobsites,[65] conducted safety training,[66] delivered a truck,[67] hired a Texas-based operations manager,[68] rented office space in Texas,[69] and established an office in Texas.[70] These contacts are inert. Even considered together, the jurisdictional evidence does not establish that each, or any one, of these Defendants purposely directed his activities at Texas, and that the alleged injuries arise out of, or relate to those activities. Simply put, when the specified acts of each Defendant is considered, such activity is insufficient to establish the requisite minimum contacts for specific jurisdiction. Thus, Defendants could not reasonably anticipate being hailed into Texas court on the basis of these allegations.

---

[60] Dkt. No. 14 p. 3. ¶ 23.
[61] *World-Wide Volkswagen Corp.,* 444 U.S. at 297.
[62] Dkt. No. 14 p. 2. ¶¶ 8–10.
[63] *Id*. p. 3 ¶ 19.
[64] *Id*. ¶ 20.
[65] Dkt. No. 21-2.
[66] Dkt. No. 20-1 p. 3. ¶ 7.
[67] *Id*. ¶ 6.
[68] Dkt. No. 21 p. 2.
[69] Dkt. No. 20-1 p 3 ¶ 6.
[70] Dkt. N. 21 p. 5.

Plaintiffs levy more damning allegations against Defendants, which are insufficiently pled and thus properly ignored for purposes of the present motion. For example, Plaintiffs allege the following:

- Defendants failed to pay overtime wages . . . .[71]

- Defendants did not keep time logs of hours worked, therefore defendants . . . [violated the] FLSA.[72]

- Defendants violated Texas Labor Code §21.055 [concerning unlawful retaliation].[73]

- Defendants terminated Plaintiff [Devries] because he informed Defendants that continued wage payment under the day rate form was in direct violation of the FLSA.[74]

- Plaintiff was terminated in retaliation in his efforts to inform Defendants of discriminatory practices . . . .[75]

These allegations, employing the globular "Defendants," are both conclusory and leave unclear who committed the acts in question. As previously noted, the actions of Defendant Unterbrink are irrelevant to the present motion, while the actions of Hamlin, Highfill, and Miller are relevant. The Fifth Circuit and U.S. Supreme Court do not permit indiscriminate jurisdictional allegations to support a finding of personal jurisdiction.[76] Accordingly, the allegations listed above are properly ignored for purposes of this Court's personal jurisdiction analysis. When these allegations are ignored, there exist no contacts upon which Defendants could reasonably anticipate being haled into Texas court. Thus, Plaintiffs have not established a prima facie case that this Court has specific personal jurisdiction over Defendants Hamlin, Highfill, and Miller.

    B. *General Jurisdiction*

---

[71] Dkt. No. 14 p. 4. ¶ 31.
[72] *Id*. p .3 ¶ 23.
[73] *Id*. p. 4. ¶ 34.
[74] *Id*. ¶ 35.
[75] *Id*. ¶ 37.
[76] *Wireless Toyz Franchise, LLC*, 255 Fed. Appx. at 795 (citing *Rush v. Savchuk*, 444 U.S. 320, 332–33 (1980)(holding that aggregating the defendant into a collective of "defending parties" did not satisfy federal due process).

The Court takes note of the fiduciary shield doctrine, which neither party discusses. This doctrine prohibits a court from considering an individual defendant's in-forum conduct performed solely in his corporate capacity.[77] Texas case law on this doctrine, though not binding, is instructive because the Texas long-arm statute purports to be coextensive with Fourteenth Amendment Due Process, and thus Texas state court personal jurisdiction analyses are similar to those conducted in federal court. The Texas Supreme Court does not appear to have adopted the fiduciary shield doctrine, and at least two Texas intermediary appellate court decisions cast doubt on the doctrine's consistency with United States Supreme Court precedent.[78] In an abundance of caution, and because the outcome is the same regardless, the Court does not apply the fiduciary shield doctrine in this instance. Even when the Court considers the *full* spectrum of Plaintiffs' jurisdictional allegations and evidence, they still do not adequately support general jurisdiction over Defendants.

As a starting point, the Court observes that each Defendant is a resident of Oklahoma, not Texas.[79] There is no evidence that Defendants personally possessed any property located in Texas, maintain a bank account and money on deposit in Texas, pay taxes in Texas, maintain a telephone number listed in Texas, or maintain a personal office in Texas.[80] There is also no evidence or allegation that Defendants have ever resided in Texas. Taken together, these facts strongly suggest that Plaintiffs are not "at home" in Texas.

---

[77] *See e.g, Stuart v. Spademan*, 772 F.2d 1185, 1197 (5th Cir. 1985); *Evergreen Media Holdings, LLC v. Safran Co.*, 68 F. Supp. 3d 664, 676 (S.D. Tex. 2014) ("Generally under the 'fiduciary shield doctrine,' 'an individual's transaction of business within the state solely as a corporate officer does not create personal jurisdiction over that individual though the state has in personam jurisdiction over the corporation [.]'").

[78] *See Brown v. Gen. Brick Sales Co., Inc.*, 39 S.W.3d 291, 300 (Tex. App.—Fort Worth 2001, no pet.) (implying fiduciary shield doctrine to be a "blanket" exception to individual, fact-based inquiries of a court's jurisdiction over each defendant in question as mandated by the United States Supreme Court in *Calder v. Jones*, 465 U.S. 783, 789 (1984)); *see also Gen. Elec. Co. v. Brown & Ross Intern. Distributors, Inc.,* 804 S.W.2d 527, 532 (Tex. App.—Houston [1st Dist.] 1990, writ denied) (holding that *Calder*, 465 U.S. 789 does not permit an individual defendant's in-forum contacts to be disregarded for jurisdictional purposes merely because of their status as a corporate officer, effectively undoing the fiduciary shield doctrine).

[79] Dkt. No. 14 p. 2. ¶¶ 8–10.

[80] *See* Dkt. No. 20 p. 4.

Plaintiffs offer more jurisdictional allegations, but they are vague and offer little in the way of details concerning the extent, duration, and frequency of Defendants' contacts with Texas.[81] For example, Plaintiffs allege that Defendants "contracted for work [for Bulldog] in the state of Texas,"[82] but fail to allege *how much* work, *how often* such contacts took place, and *over what period of time*. Plaintiffs also allege that Defendants have worked in Texas as drill well consultants,[83] but offer no explanation of how many times Defendants visited in that capacity or over what period of time.

Plaintiffs supply evidence that Defendants Miller and Highfill recruited family and friends to work in Texas,[84] but fail to explain who Defendants recruited, how many people Defendants recruited, how often, and over what period of time such recruitment took place. Plaintiffs' allegation that Defendants recruited Texans is confounded by Plaintiffs' own admissions that Defendants "hired Gary Unterbrink to be an operations manager. Defendants recruited individually *or through an intermediary* [i.e., through Unterbrinnk]."[85] Moreover, Plaintiffs state in their complaint that "Gary Unterbrink was an owner and primary decision maker for Bull Dorado Well Testing, LLC, having managing authority over employees."[86] It thus appears from Plaintiffs' own evidence and allegations that Plaintiffs have no idea who, if anyone, Defendants *themselves* actually recruited to work in Texas, except for Unterbrink and some unknown number of family and friends.[87]

---

[81] *Johnston*, 523 F.3d 602, 610 (5th Cir. 2008).
[82] Dkt. No. 14 p. 3 ¶ 19.
[83] Dkt. No. 21-2 ¶ 1.
[84] *Id.* ¶ 4.
[85] Dkt. No. 21 p. 2. (emphasis added).
[86] Dkt. No. 14 p. 5.
[87] The Court notes that the Texas long-arm statute provides for personal jurisdiction over a defendant who recruits Texans to work inside or outside of Texas. *See e.g., BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002); *see also* Tex. Civ. Prac. & Rem. Code Ann. § 17.042 (West). However, this is not the end of the inquiry. It is the Court's job to ensure that Due Process is satisfied before hailing Defendants into this Court. Federal district courts within the Fifth Circuit consider the satisfaction of Texas's long-arm statute as a non-dispositive

Otherwise, it appears from the evidence that Hamlin visited Texas five times to conduct safety training in his role as safety manager for Bulldog,[88] and once in his role as CEO to help deliver a truck.[89] Miller *may* have visited Texas on three to four occasions,[90] functioning as a "company man" with regard to the delivery of four packages—though it is not clear where they were delivered from or to.[91] Highfill was seen at a job site once a week on average, though it is not clear how many times total or over what period of time, in what capacity, or even in what state.[92] Grantham's affidavit states that he saw Highfill "from time to time on the packages I worked,"[93] but he leaves entirely open how many times this was, or where he was working. Devries' affidavit states that Miller and Highfill "had direct interaction with Bulldog employees daily,"[94] but omits which employees he was referencing, or within what state these interactions took place. Plaintiffs supply evidence that one *or* all Defendants (it is not clear which), executed two leases for office and equipment yard space for Bulldog in Texas.[95] Plaintiffs also attest that Defendants "established an office in Hidalgo County for Bulldog."[96] However, there is no allegation that Defendants ever visited this office.

---

factor among others when determining whether Due Process is satisfied. *See Rabin v. McClain*, 881 F. Supp. 2d 758, 767 n.75 (W.D. Tex. 2012) (citing *Kervin v. Red River Ski Area, Inc.*, 711 F.Supp. 1383, 1387 (E.D.Tex.1989) for the proposition that a district court considers in-state recruitment as a factor in the analysis). Consequently, district courts may find no general jurisdiction even though the state long-arm statute might otherwise be satisfied. *See Aries Intern., LLC v. Isramco Negev 2 Ltd. P'ship*, 4:13-CV-3745, 2014 WL 4924002, at *4 (S.D. Tex. Sept. 30, 2014) (finding no general jurisdiction even when it was alleged Defendant recruited Texans to work within and without the state); *Clark v. Moran Towing & Transp. Co., Inc.*, 738 F. Supp. 1023, 1030 (E.D. La. 1990) (collecting cases in which courts found no general jurisdiction even though defendant recruited in-forum residents for employment); *Carter v. Ocean Ships, Inc.*, CIV. A. 90-2132, 1990 WL 128207, at *4 (E.D. La. Aug. 27, 1990) (noting the lack of authority for asserting general jurisdiction over a defendant who recruited non-plaintiffs in the forum state).
[88] Dkt. No. 20-1 p. 3. ¶ 7.
[89] *Id*. ¶ 6.
[90] Dkt. No. 21-3 p. 1. ¶ 2. Joe Goodman's affidavit does not specify where he was working at the time Miller visited his job sight.
[91] Dkt. No. 21-4. ¶ 1. Barry Grantham's affidavit does not specify where the deliveries occurred.
[92] Dkt. No. 21-3 ¶ 1.
[93] Dkt. No. 21-4 ¶ 2.
[94] Dkt. No. 21-2 ¶ 3.
[95] Contrast Dkt. No. 21-2 ¶ 6 with Dkt. No. 21 p. 5.
[96] Dkt. No. 21 p. 5.

In sum, Plaintiffs' jurisdictional allegations and evidence are plagued with ambiguity and lack of detail, fail to specify the extent, duration, and frequency of Defendants' contacts with Texas, and otherwise leave unclear who did what and where. They are sketchy. On these facts, it cannot be said that Defendants have such systematic, continuous, extensive, and substantial contacts with Texas such that Defendants are effectively at home in Texas. Plaintiffs have thus failed to establish a prima facie case of general jurisdiction over Defendants.

Plaintiffs' allegations and evidence documenting Defendants' contacts with Texas also stand in contrast to the type, number, and duration of contacts the Fifth Circuit has found to be sufficient to give rise to general jurisdiction over an individual defendant. The Fifth Circuit in *Harvey*[97] found general jurisdiction given the following contacts, stating that their decision was a close call:[98]

> "(1) Harvey attended college and was formerly employed in Texas; (2) Harvey owns real estate in Texas, specifically a condominium in Houston; (3) Harvey has traveled to Texas on numerous occasions to visit his children; (4) Harvey frequently visits Texas for recreation; and (5) Harvey has transacted a great deal of business in Texas."[99]

Without any further detail, the facts in *Harvey* which gave rise to a close-call decision already differ from the facts at bar. There is no allegation or evidence in the present case suggesting that Defendants ever lived in Texas, much less spent extended periods of time (i.e., years) in Texas for purposes of attending college. Furthermore, Plaintiffs do not allege or provide any evidence that Defendants ever traveled to Texas for personal reasons, unlike the defendant in *Harvey* who "frequently" visited Texas for recreation, and traveled to Texas "on numerous

---

[97] *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 777 (5th Cir.1986).
[98] *Id*. at 779 ("Having concluded that insufficient contacts existed between Texas, Harvey, and the instant controversy to support an exercise of specific jurisdiction, we proceed to consider whether an exercise of general jurisdiction was proper.3 To do so requires us to explore the nature of Harvey's contacts with Texas to determine whether they constitute the kind of continuous and systematic contacts required to satisfy due process. *Although the issue is close*, we conclude that they do.") (emphasis added).
[99] *Id*.

occasions" to visit his children. Moreover, and unlike Defendants in this case, the defendant in *Harvey* was an officer for three Texas companies, and made visits to Texas in each of those capacities. In sum, the defendant in *Harvey*, unlike Defendants in this case "maintained constant and extensive personal and business connections with Texas throughout his adult life."[100]

Plaintiffs attempt to rectify their insufficient allegations and evidence by imputing any of Unterbrink's jurisdictional conduct onto Defendants.[101] To support this contention, Plaintiffs cite a single Texas Supreme Court case from 2007 which discusses the "single business enterprise" theory.[102] According to this theory, jurisdictional conduct of a corporate subsidiary may be imputed to the parent corporation.[103] Plaintiffs contend that Unterbrink counts as Defendants' "subsidiary," and thus his actions may be imputed to Defendants.[104]

Plaintiffs' argument fails. The case Plaintiffs cite specifically states that the Texas Supreme Court has not endorsed the single business enterprise doctrine: "Here, the court of appeals held that Province and Minden operated as a single business enterprise—*a theory we have never endorsed*—and, therefore, Province's Texas contacts could be imputed to Minden."[105] Indeed, one year later, the Texas Supreme Court expressly abrogated the single business enterprise doctrine.[106] Even so, the Court observes a veritable chasm between Plaintiffs' legal theory—which applies to corporations and their subsidiaries—and the facts of this case, which

---

[100] *Harvey*, 801 F.2d at 779.
[101] Dkt. No. 21. p. 3.
[102] *PHC-Minden, L.P. v. Kimberly-Clark Corp.*, 235 S.W.3d 163, 173 (Tex. 2007).
[103] *Id*. ("Here, the court of appeals held that Province and Minden operated as a single business enterprise—a theory we have never endorsed—and, therefore, Province's Texas contacts could be imputed to Minden.").
[104] Dkt. No. 21 p. 3. ("In essence Hamlin, Highfill and Miller are asserting Mr. Unerbrink as the lone operator and controller of the company (subsidiary) which would make them, as the sole members of Bulldog, merely common investors have no authority or other direct responsibilities (parent company)").
[105] *PHC-Minden, L.P.*, 235 S.W.3d at 173 (emphasis added); *see also Southern Union Co. v. City of Edinburg*, 129 S.W.3d 74, 86–87 (Tex. 2003) (noting that this Court "has never considered the 'single business enterprise' concept in any detail" and declining to decide "whether a theory of 'single business enterprise' is a necessary addition to Texas law regarding the theory of alter ego for disregarding corporate structure").
[106] *See SSP Partners v. Gladstrong Investments (USA) Corp.*, 275 S.W.3d 444, 456 (Tex. 2008) ("we hold that the single business enterprise liability theory set out in [a Texas intermediary appellate court case] will not support the imposition of one corporation's obligations on another.").

involve LLC members and a manager they hired. By default, LLC members are not themselves a corporate entity, and even if they were, Unterbrink is not a corporate "subsidiary" in any meaningful sense of the word.

Because Plaintiffs have failed to establish a prima facie case of specific or general jurisdiction over Defendants, Defendants do not have the minimum contacts with Texas required to hale them into this Court without infringing upon their Due Process rights under the Fourteenth Amendment. Accordingly this court lacks personal jurisdiction over Defendants.

## IV. HOLDING

Defendants' motion is hereby **GRANTED**. Because dismissal for lack of personal jurisdiction is not a ruling on the merits,[107] Defendants Hamlin, Highfill, and Miller are **DISMISSED WITHOUT PREJUDICE** from the case.

IT IS SO ORDERED.

DONE at McAllen, Texas, this 27th day of March, 2017.

_____
Micaela Alvarez
United States District Judge

---

[107] *See Stevens v. Hayes*, A-11-CA-550 LY, 2012 WL 2572790, at *9 (W.D. Tex. July 2, 2012), subsequently aff'd, 535 Fed. Appx. 358 (5th Cir. 2013) (citing *Guidry v. U.S. Tobacco Co., Inc.*, 188 F.3d 619, 623 (5th Cir. 1999) for the proposition that a dismissal for lack of personal jurisdiction is not on the merits, and therefore must be without prejudice.).